## INHABITANTS OF ESSEX *vs.* JONATHAN LOW.

Land anciently granted to a territorial parish does not, upon the incorporation of a town with the same territorial limits, pass thereby to the town, if prior to such incorporation a new religious society has been formed therein, recognized by statute as an independent organization, and its members therefore exempted from taxation in the original parish.

WRIT OF ENTRY. In the superior court, upon agreed facts, which are sufficiently stated in the opinion, judgment was rendered for the tenant, and the demandants appealed to this court.

*R. H. Dana Jr. & W. C. Endicott,* for the demandants. This is a question of succession. The grant was " to the inhabitants of the precinct," for the use of said inhabitants forever, for purposes clearly municipal, and not parochial. *Baker* v. *Fales,* 16 Mass. 506. *Lakin* v. *Ames,* 10 Cush. 198, 217. *Emerson* v. *Wiley,* 10 Pick. 310. The inhabitants of that precinct have since been incorporated as a town, and clothed with full municipal powers. *St.* of 1818, *c.* 85. The demandants are technically the grantees, by the language of act of 1818, which is " to incorporate the Second Parish of Ipswich into a town, by the name of Essex." But, beyond the technical argument, the analogies and reasons of all the cases on this subject establish the following general rule : If a grant was made to the inhabitants of a town or a parish, in the old state of things, when secular and religious functions were combined, and there was afterwards a severance of those functions, the land fell to the parish or to the town, that is to the inhabitants as a religious or as a secular corporation, according as the land was held for religious or secular uses. It is immaterial what caused this severance of functions, whether the setting off of a second parish, or the incorporation of the old parish with limits conterminous with the town, either of which events reduced the town to its secular functions. *Lakin* v. *Ames,* 10 Cush. 198. *First Parish in Sudbury* v. *Jones,* 8 Cush. 184. *First Parish in Medford* v. *Pratt,* 4 Pick. 222. *First Parish in Medford* v. *Medford,* 21 Pick. 21, 199 *Milton* v. *First Parish in Milton,* 10 Pick. 447. *First Parish in Shrewsbury* v. *Smith,* 14 Pick. 297. The reasons for this rule are specially applicable to this case. The grantees and beneficiaries, that is the inhabitants of the precinct, are now a secular corporation. The old corporation, that is the parish or precinct, is no longer a corporation of the inhabitants, who are both the grantees and beneficiaries under the grant, but a voluntary religious society, membership of which depends on religious tests, and none of whose members need be inhabitants of Essex, that is need be grantees or beneficiaries under the grant.

*J. C. Perkins,* for the tenant, cited *Sts.* 1811, *c.* 6 ; 1817, *c.* 77 ; *Ludlow* v. *Sikes,* 19 Pick. 324 ; *Oakes* v. *Hill,* 10 Pick. 344 ,

*Fisher* v. *Whitman,* 13 Pick. 350 ; *Dillingham* v. *Snow,* 3 Mass.
276 ; S. C. 5 Mass. 554 ; *Cochran* v. *Camden,* 15 Mass. 302 ;
*Jewett* v. *Burroughs,* Ib. 464 ; *Milford* v. *Godfrey,* 1 Pick. 97 ;
*Whittemore* v. *Smith,* 17 Mass. 347 ; *First Parish in Medford* v.
*Pratt,* 4 Pick. 222 ; *First Parish in Medford* v. *Medford,* 21 Pick.
199 ; *First Parish in Sudbury* v. *Jones,* 8 Cush. 184 ; *Lakin* v.
*Ames,* 10 Cush. 217 ; *First Parish in Woburn* v. *Middlesex,* 7
Gray, 106.

HOAR, J. The doctrine for which the demandants contend is
certainly novel, and would introduce a rule for the transmission
of title to real estate, if not anomalous, at least unexampled.
This is a writ of entry, and the town of Essex must show a
title to the land which they demand. The land was conveyed
to " the inhabitants of the precinct of Chebacco (so called) in
the township of Ipswich," by Mr. Pickering, the minister of the
precinct, in 1734. The uses for which the conveyance was
made were for a pound on one part of the land, for clay for the
inhabitants from another part, and the remainder to be vacant,
common and unfenced for the general use and benefit of said
precinct forever. The precinct of Chebacco was the second ter-
ritorial parish in the town of Ipswich, and was incorporated in
1679. Its territory was the same which in 1819 was incorpo-
rated as the town of Essex. In 1808 a religious society called
Christian or Free Will Baptist was organized in the Chebacco
precinct, built a meeting-house, employed a minister of the Bap-
tist order, and has ever since been in existence. The members
of this society, so far as the laws from time to time permitted,
withdrew themselves from the Chebacco parish, and ceased to
pay taxes to it, or to act in its affairs.

These facts are decisive against the claim of the demandants.
They have no title unless they acquired it by their incorporation
as a town in 1819. If, by that act, the parish to which the land
belonged became united with the new municipal corporation,
making but one corporation with distinct capacities, then the
decision in *Lakin* v. *Ames,* 10 Cush. 216, " that property granted
originally to a parish would, upon the incorporation of the parish
into a town, pass to and be held by the new corporation," would

support the position that this land became the property of the town of Essex. But the parish which owned the land in 1819 was not incorporated as the town of Essex; has never been clothed with municipal functions; nor lost its identity as an independent and distinct corporation. The act incorporating the town of Essex is indeed entitled " An act to incorporate the Second Parish of Ipswich into a town, by the name of Essex;" and the first section enacts " that all that part of the town of Ipswich, in the county of Essex, called the Second Parish, and lying within the boundaries hereinafter mentioned," is incorporated into a town. But it is evident that this is a mere matter of territorial description, and the boundaries are afterward set forth with great particularity. The society organized in 1808 was, by *St.* 1811, *c.* 6, recognized as an independent organization, and its members were entitled to exemption from taxation in the Chebacco parish. *Oakes* v. *Hill,* 10 Pick. 344. *Fisher* v. *Whitman,* 13 Pick. 350. From 1811, therefore, the property of the latter, with the duties belonging to it and the burdens to which it was subjected, were left to it as a corporate body composed only of the members who had not joined the new society. The incorporation of the town of Essex included both the parish and the unincorporated society; but the property of neither passed to the town. Neither town nor parish ever seems to have supposed that they had become one corporation, or in any way acted together, or used the same officers or records.

The ingenious suggestion of the demandants to meet this difficulty is, in substance, that the uses to which the land was devoted were secular, and not parochial; so that, if the grant had been made to a town which was also a parish, on a subsequent division the property would have vested in the municipal body; and that, as a municipal corporation has at last been created, covering the same territory which was formerly the parish that received the grant, the title to the property should now pass to it. We are aware of no precedent for such a transfer, nor of any law of real estate which sanctions it. It would certainly be contrary to all technical rules. The grant was to

a parish. When the members of the Baptist society withdrew from the Chebacco parish, they voluntarily abandoned all the privileges, rights and advantages, spiritual and temporal, which had previously belonged to them as inhabitants of that parish. It was right that this should be so, as they left the residue of the parish to sustain, without their aid, all its burdens and obligations. The parish preserved its corporate identity, bound to perform its contracts and to discharge its parochial duties. That legal identity still continues, and no law which is known to this court can take from it its property.

*Judgment for the tenant.*